IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO.

THE STATE OF FLORIDA, *ex rel.*
Bill McCollum, Attorney General,

 Plaintiff,

vs.

THE UNITED STATES, THE
UNITED STATES DEPARTMENT
OF THE INTERIOR, and DIRK
KEMPTHORNE, in his official
capacity as Secretary of the United
States Department of the Interior,

 Defendant.
_____/

**MEMORANDUM IN SUPPORT
OF MOTION FOR
PRELIMINARY INJUNCTION**

 Plaintiff submits this memorandum in support of their motion for preliminary injunction. The Complaint in this action seeks a declaration that notice of a Tribal - State Gaming Compact ("Compact") executed by the Governor of Florida is not eligible for publication because it is not clear that it was validly "entered into." Doubt has been raised by litigation in the Florida Supreme Court about whether the Governor is authorized to execute the Compact, thereby binding the State of Florida to its terms for 25 years, without prior authorization or subsequent ratification by the Florida Legislature. The purpose of Plaintiffs' motions is to

maintain the *status quo* while the validity of the Compact, i.e. the authority of the Governor to execute it, is litigated.[1] Should the Florida Supreme Court rule that the Governor lacked authority to execute the Compact, this preliminary injunction should be made permanent. In the alternative, if the Florida Supreme Court rules that the Governor acted within his authority to execute the Compact, then this preliminary injunction can be vacated.

## BACKGROUND

In 1988, Congress passed the Indian Gaming Regulatory Act, 25 USC §§ 2701, *et seq.* ("IGRA"). All gaming on Indian lands is governed by the terms of this Act. Among its stated purposes is "to provide a statutory basis for the operation of gaming by Indian tribes...." 25 USCS § 2702 Pursuant to the Commerce Clause, Art I, § 8, U.S. Const., Congress possesses plenary authority over Indian Tribes and Indian lands. Congress could have authorized any or all types of gaming on Indian lands, subject to federal regulation or no regulation at all. Congress, however, chose not to do this. Instead, "the Act [IGRA] extends to

---

[1] The Speaker of the Florida House of Representatives has petitioned the Supreme Court of Florida for a writ of *quo warranto*, asserting that the Governor lacked the authority to execute the Compact without Legislative ratification. *See, Florida House of Representatives v. Crist,* case no. 07-2154 (Florida Supreme Court). See, http://www.floridasupremecourt.org/pub_info/summaries/briefs/07/07-2154/index.html

2

the States a power withheld from them by the Constitution." *Seminole Tribe v. Fla.*, 517 U.S. 44, 58 (1996)  As to class III gaming, IGRA gives the State the opportunity to effectuate its public policy by negotiating a Compact which will govern the gaming activities on Indian lands within its borders.

IGRA divides gaming into three classes.  Class I gaming consists of "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations."  25 USCS § 2703(6)  Class II gaming consists of bingo and (if played in the same location) pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo and certain non banked card games if played under State rules.  25 USC § 2703(7)  Class III gaming "means all forms of gaming that are not class I gaming or class II gaming."  25 USC § 2703(8)  This case addresses class III gaming only.

Class III gaming is legal on Indian lands only if, *inter alia*, it is "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect."  25 USCS § 2710(d)(1)(C)  In *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997), the court held that the "entered into" portion of that section "imposes an independent requirement and the compact must be validly entered into by a State before it can go into effect, via Secretarial

approval, under IGRA." *Id.* at 1555  The gravamen of this case is that, typically when a compact is presented to the Secretary for approval, it is clothed with a presumption of validity under State law.  This is so because, "As the Secretary observes, a compact is not valid unless properly authorized, but the Secretary is not expected to resolve State law issues regarding that authority in the 45-day period given to him to approve a compact." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997)

In this case, however, the Secretary cannot rely on such a presumption because a substantial challenge has been filed in the Florida Supreme Court asserting that the Governor was not authorized to execute the Compact and that therefore it was not validly "entered into."  The Compact therefore is not eligible to be noticed making it effective unless the issue of its underlying validity pursuant to State law is resolved favorably to the Governor and Tribe.[2]

---

[2] "IGRA is a federal statute, the interpretation of which presents a federal question suitable for determination by a federal court. Thus, we indisputably have the power to determine whether a Tribal-State compact is valid....State law must determine whether a state has validly bound itself to a compact." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997)

4

PRELIMINARY INJUNCTION

"The primary purpose of a preliminary injunction is to preserve the relative positions of the parties." *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citing *Camenisch*). Granting of the requested preliminary injunction in this case will indeed preserve the relative positions of the parties, i.e. the status quo. There currently is no effective class III gaming compact between the Seminole Tribe of Florida and the State of Florida and therefore there is no legal class III gaming on Indian lands in Florida. Should the Court deny the instant request, the Secretary will publish notice of the Compact in the Federal Register making it effective.[3] Pursuant to the Compact, upon publication and effectiveness, $50,000,000.00 (fifty million dollars) will change hands and the Tribe will be authorized to engage in class III gambling activities that are criminally prohibited to anyone else in Florida.[4]

---

[3] 25 U.S.C. § 2710(d)(8)(D)

[4] The Compact would authorize the Tribe to engage in house banked card games which are prohibited for anyone else in Florida. 849.08, Fla. Stat. (prohibiting gambling generally); 849.086(12)(a), Fla. Stat. (prohibiting banked card games at authorized cardrooms) In addition, the Compact would expand the reach of other forms of class III gaming to other areas of the State where they are otherwise prohibited. The petition filed in the Florida Supreme Court asserts that decisions to allow such expansion of gambling is a quintessentially legislative

As set forth below, Plaintiffs have met the burden of showing compliance with the requirements for issuance of a preliminary injunction and the Court should issue same.

## INJUNCTION

When deciding whether to grant a preliminary injunction, the district court must examine whether "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by the injunction." A court must balance these factors, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007)

### LIKELIHOOD OF SUCCESS ON THE MERITS

Success on the merits in this case would consist of a finding that the Compact was not validly "entered into" for purposes of IGRA, and therefore it cannot be published and allowed to become effective. The question of whether the

---

decision which is beyond the authority of the Governor.

Compact is valid for IGRA purposes is a federal question,[5] however, the answer to that question necessarily is a question of State law.[6] That question is now pending before the Florida Supreme Court, the ultimate arbiter of questions of State law. A preliminary injunction here would prevent an invalid compact from taking effect which would allow parties to change their positions in a way that is inconsistent with the public policy of Florida and in a way that undermines Florida's sovereignty.

## IRREPARABLE INJURY TO PLAINTIFF

Separation of powers is a bedrock principle of Florida Constitutional doctrine. Article II, § 3, Fla. Const., provides

> The powers of the State government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

The importance of this doctrine has been emphasized in numerous Florida Supreme Court cases. *See, e.g. Askew v. Cross Keys Waterways*, 372 So. 2d 913, 924-25

---

[5] "IGRA is a federal statute, the interpretation of which presents a federal question suitable for determination by a federal court. Thus, we indisputably have the power to determine whether a Tribal-State compact is valid." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997)

[6] Congress intended that State law determine the procedure for executing valid gaming compacts....Thus, the State and Tribe must be validly bound under State law. *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1558 (10th Cir. 1997)

(Fla. 1978)(textual incorporation of separation of powers provision in Florida Constitution provides a stricter standard then in other states or under the U.S. Constitution.) Violation of this doctrine can constitute irreparable harm. *See, Fletcher v. Graham*, 192 S.W.3d 350, 357 (Ky. 2006) (Violation of the separation of powers constituted irreparable harm supporting issuance of writ of mandamus.)

IGRA was meant to accommodate Tribal *and* State interests. The Senate report states:

> This legislation is intended to provide a means by which tribal and State governments can realize their unique and individual governmental objectives, while at the same time, work together to develop a regulatory and jurisdictional pattern that will foster a consistency and uniformity in the manner in which laws regulating the conduct of gaming activities are applied.

S. Rep. No. 100-446, at 6 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3076. The Senate Report described the Tribal-State compacts as follows:

> The Committee concluded that the use of compacts between tribes and states is the best mechanism to assure that *the interests of both sovereign entities* are met with respect to the regulation of complex gaming enterprises such as parimutuel horse and dog racing, casino gaming, jai alai and so forth. The Committee notes the strong concerns of states that state laws and regulations relating to sophisticated forms of class III gaming be respected on Indian lands where, with few exceptions, such laws and regulations do not now apply. The Committee balanced these concerns against the strong tribal opposition to any imposition of State jurisdiction over activities on Indian lands. The Committee concluded that the compact process is a viable mechanism for setting various matters between two equal

> sovereigns. . . .
>
> In the Committee's view, both State and Tribal governments have significant governmental interests in the conduct of class III gaming. . . . A State's governmental interests with respect to class III gaming on Indian lands include the interplay of such gaming with the State's public policy, safety, law and other interests, as well as impacts on the State's regulatory system, including its economic interest in raising revenue for its citizens.

*Id.* at 13, reprinted in 1988 U.S.C.C.A.N. at 3083 (emphasis added).

The inability to vindicate these interests in the enforcement of the State's public policy and laws governing gambling justify the issuance of a preliminary injunction.

> Where the interest of the State is involved as in the enforcement of its laws; and where, in particular, illegal acts or practices are alleged and sought to be enjoined ...it is not necessary to independently establish "irreparable harm" in order to be entitled to injunctive relief.

*State v. Samscot Enterprises, Inc.*, 297 So. 2d 69, 72 (Fla. 4th DCA 1974). *See Rich v. Ryals*, 212 So.2d 641 (Fla.1968):

> When the interests of the State or other political division or the interests of those entitled to its protection are affected by criminal acts or practices, the State, acting through its governmental agencies, may invoke the jurisdiction of equity to have them restrained. In such cases, the presence of actual injury is not an essential element."

In *United States v. RX Depot, Inc.*, 297 F. Supp. 2d 1306, 1310 (D. Okla. 2003), the court held that "violations of the FDCA imply harm to the public." *See also, New*

*York v. Shinnecock Indian Nation*, 280 F. Supp. 2d 1, 6 (D.N.Y. 2003) (arguing that violations of the State's criminal laws and public policy against gambling constitute irreparable harm to members of the public); *Int'l Snowmobile Mfrs. Ass'n v. Norton*, 304 F. Supp. 2d 1278, 1287 (D. Wyo. 2004) (arguing that infringements on State sovereignty constitute irreparable harm.)

Federal courts have held that invasions of Tribal sovereignty constitute irreparable harm. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006)(We have repeatedly stated that such an invasion of tribal sovereignty can constitute irreparable injury. See, e.g., *Hoover*, 150 F.3d at 1171-72; *Seneca-Cayuga v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989)). In *Comanche Nation v. United States*, 393 F. Supp. 2d 1196, 1205 (D. Okla. 2005), the court granted a preliminary injunction prohibiting publication of notice of an approved compact. On the issue of irreparable harm and harm balancing, the Court held:

> The tribe's right of self-governance will be undermined. Although the FSA Tribe will suffer economic loss from the inability to conduct class III gaming activities without the effective compact, the court concludes that the harm to the Comanche Nation still tips the scale in favor of the Comanche Nation. Entry of a preliminary injunction will simply maintain the status quo between the parties. The FSA Tribe, while being precluded from conducting class III gaming activities, will still be authorized to continue its class II gaming activities. Although it may not be on equal footing with the Comanche Nation without the class III gaming activities, the court concludes the harm to the Comanche Nation from the loss of tribal self-governance is greater

than the economic loss to the FSA Tribe.

The same is true here. The State's right of self governance through its public policy on gambling activities will be undermined and the Seminole Tribe will be able to continue its class II activities. The balance here clearly tips in favor of the State and the issuance of the injunction. See also, *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250-1251 (10th Cir. 2001); *Seneca-Cayuga Tribe of Oklahoma v. State of Okla. ex rel. Thompson*, 874 F.2d 709, 716 (10th Cir. 1989)).

Certainly State sovereignty is deserving of no less protection and respect. In *Kansas v. United States*, 86 F.Supp.2d 1094, 1100 (D. Kan. 2000), the court granted the State of Kansas' motion to enjoin the National Indian Gaming Commission from making an Indian lands determination, finding that Kansas "will suffer irreparable injury if the agency's determination has the effect of extinguishing [Kansas'] right to exercise sovereignty over the land." On appeal, the Tenth Circuit affirmed the grant of injunction, explaining that in the absence of IGRA, the State exercises sovereignty that allows it the right to prohibit gaming. *Kansas v. United States*, 249 F.3d 1213, 1223 (10th Cir. 2001). A determination on whether IGRA applies, therefore, "plainly has a direct and immediate impact" on the sovereign rights of Kansas. *Id.*

11

If the Compact is allowed to become effective, both Florida law and federal law will be violated. This would be contrary to the Congressional intention of respecting State sovereignty with respect to gambling regulation. Such violations of law, public policy, State sovereignty and Congressional intent constitute irreparable harm, or alternatively are the type of violations which entitle the government to an injunction without a showing of actual injury.

### INJURY TO THE DEFENDANT

There simply is no injury to the Defendant in this case even if a preliminary injunction is erroneously granted. There cannot be any injury to anyone where, as here, a preliminary injunction merely maintains the status quo in which all parties have been operating for years. Even if the Court were to consider the interests of the Seminole Tribe (which is not a party to this case), there still is no cognizable injury that would result from the issuance of the preliminary injunction. Like the *Comanche* case, the preliminary injunction will simply maintain the status quo and the Tribe will be able to continue its class II operations.

### THE PUBLIC INTEREST

Finally, the public interest must be considered. The public has an important and a substantial interest in curtailing the proliferation of illegal gambling. Because of the nature of this case, the public interest and the irreparable harm are

inextricably intertwined. If the void Compact is allowed to become effective, then the class III gaming occurring pursuant to the terms of that Compact violates both State and federal law. *See*, 18 U.S.C. § 1166 (assimilating State law making gambling on Indian lands illegal with out a valid compact.)

In *Wisconsin v. Stockbridge-Munsee Community*, 67 F. Supp. 2d 990, 1020-1021 (D. Wis. 1999), the court granted injunctive relief, stating:

> Notably, the plaintiff has an important interest in the enforcement of its criminal laws. ...Therefore, upon careful consideration, the court concludes that the interest of the public lies in favor of granting injunctive relief given the public's important interest in the enforcement of its gaming laws and the plaintiff's likelihood of success on the merits.

Allowing illegal class III gaming undermines the State's sovereignty and its ability to set the public policy of the State. Congress clearly intended that the States' policies regarding gambling would govern the scope of what occurs in Indian gaming establishments. The public interest demands that such policy be respected and the void Compact therefore cannot be allowed to become effective.

## CONCLUSION

Analysis of all the preliminary injunction factors leads to the inescapable conclusion that the Plaintiffs are entitled to the requested relief. Balancing is not needed here, as all of the factors weigh in favor of granting the relief.

Respectfully submitted this 20 Day of December, 2007.

BILL McCOLLUM
ATTORNEY GENERAL

*/s/ Jonathan A. Glogau*
Jonathan A. Glogau
Chief, Complex Litigation
Fla. Bar No. 371823
PL-01, The Capitol
Tallahassee, FL 32399-1050
850-414-3300, ext. 4817
850-414-9650 (fax)
jon.glogau@myfloridalegal.com

14