**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE STATE OF FLORIDA, ex. rel.** **Bill McCollum, Attorney General,** *Plaintiff,* *v.* **THE UNITED STATES OF AMERICA, et al.,** *Defendants.* | **Civ. No. 1:07-cv-02326-PLF** |

**FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND IN SUPPORT OF THEIR MOTION TO DISMISS**

The State of Florida ("Plaintiff") filed a complaint and motion for preliminary injunction in this action on December 27, 2007. Plaintiff now seeks to move this Court for a temporary restraining order. In response to this most recent motion, Federal Defendants respectfully request that the Court dismiss Plaintiff's complaint for lack of subject matter jurisdiction, failure to state a claim, and the failure to join an indispensable party. Additionally, Plaintiff's motion for a temporary restraining order should be denied because Plaintiff fails to show any likelihood of success on the merits, any irreparable harm, and the balance of harms and the public interest strongly favor a denial.

## INTRODUCTION

Plaintiff seeks truly extraordinary relief in this action based upon pure conjecture and without demonstrating that there exists any irreparable harm. Plaintiff seeks to unwind the clock and requests that this Court order the Secretary of the Interior ("Secretary") to undo the

ministerial act that Congress has specifically directed that the Secretary take.  Pursuant to the

Indian Gaming Regulatory Act ("IGRA"), the Secretary is required to publish notice in the

Federal Register upon the completion of a 45 day period after submission of a gaming compact.

This requirement is directed by Congress and the Secretary has no discretion in the matter.  On

December 31, 2007, after expiration of the 45 day period, the Secretary sent notice of a gaming

compact entered into between the Seminole Tribe of Florida (the "Tribe") and the Governor for

Florida on behalf of State of Florida to the Federal Register for publication pursuant to IGRA.

Plaintiff, without taking a position as to the underlying merits, now seeks to have this Court

somehow block the publication process that has already started.  Plaintiff's concerns stem from

an action challenging the Florida Governor's authority to sign the compact and bind the State

pending before the Florida State Supreme Court.  Plaintiff seeks a declaration that notice of the

compact is not eligible for publication because it is not "clear" that it was validly entered into.

This mere speculation cannot be grounds for such an extraordinary request after the fact.

Furthermore, the Secretary can no longer be enjoined because notice has already been provided

to the Federal Register for publication.  Rather, the administrative process as directed by

Congress is already in place.  Under IGRA the compact takes effect when notice is published,

but only to the extent it is consistent with IGRA provisions requiring that a state and a tribe enter

into a compact.  If the Florida State Supreme Court decides under Florida law that the Governor

had no authority to bind the State, the Tribe has no greater rights to game whether the notice is

published or not. Therefore there can be no irreparable harm and thus no basis for an injunction

in this action.

## FACTUAL BACKGROUND

IGRA governs all gaming on Indian lands.  18 U.S.C. §§ 1166-68; 25 U.S.C. §§ 2701, et seq.  IGRA *inter alia* authorizes states and Indian tribes to enter into compacts for gaming and divides gaming into three classes.

Class I gaming is regulated exclusively by the tribes and includes social and traditional games.  Class II gaming includes bingo and related games, which may be played in a state that permits any such games by any person or organization.  Class III gaming, which is regulated by the compacts entered into by states and tribes, includes all other games such as those played in casinos, slot machines, and parimutuel betting.

IGRA requires that compacts be properly entered into and properly submitted to the Secretary for approval.  It provides that no Class III gaming activities are lawful unless "conducted in conformance with a Tribal-state compact entered into by the Indian tribe and the State under paragraph (3) that is in effect."  25 U.S.C. § 2710(d)(1)(C).  Paragraph (3) states:

> (A) Any Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.
>
> (B) Any State and any Indian tribe may enter into a Tribal-State compact governing gaming activities on the Indian lands of the Indian tribe, but such compact shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register.

25 U.S.C. § 2710(d)(3)(A) & (B).

Secretarial approval is governed by 25 U.S.C. § 2710(d)(8) which provides that:

> (8)(A) The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.
>
> (B) The Secretary may disapprove a compact described in subparagraph (A) only if such compact violates--
>
> > (i) any provision of this chapter,
> >
> > (ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or
> >
> > (iii) the trust obligations of the United States to Indians.
>
> (C) If the Secretary does not approve or disapprove a compact described in subparagraph (A) before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter.
>
> (D) The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph.

25 U.S.C. § 2710(d)(8).

This case is one part of a long legal controversy related to Indian gaming in Florida. On September 17, 1991, asserting that Governor Lawton Chiles failed to negotiate in "good faith" for a compact that would have allowed the Tribe to conduct a variety of Class III games already allowed in Florida, the Tribe filed suit in the federal district court for the Southern District of Florida, pursuant to 25 U.S.C. § 2710(d)(7), requesting the relief provided by the judicial remedy provisions of the IGRA. *Seminole Tribe of Florida v. Florida*, No. 91-6756-CIV- Marcus, September 19, 1991.

The State responded by claiming immunity from suit under the Eleventh Amendment to

the Constitution.  The Tribe challenged that immunity and the district court ruled on June 18, 1992, that Congress had abrogated the State's immunity, a ruling that was overturned by the Court of Appeals for the Eleventh Circuit in 1994.  *Seminole Tribe of Florida v. Florida*, 11 F.3d 1016 (11th Cir. 1994).  In 1996, the Supreme Court affirmed the Eleventh Circuit's ruling and held that the Tribe could not sue an unconsenting state under IGRA's judicial remedy provisions.  As a result, the Tribe's suit against the State was dismissed.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

In 1996, the State of Florida brought action against the Tribe and its Chairman seeking a declaration that the Tribe was conducting Class III gaming operations, consisting of electronic or electromechanical facsimiles of games of chance, not authorized by IGRA.  The Tribe's and Chairman's motions to dismiss were granted and affirmed on appeal.  *Florida v. Seminole Tribe of Florida*  181 F.3d 1237 (11th Cir. 1999).

The States of Florida and Alabama filed an action in the United States District Court for the Northern District of Florida in 1999 challenging regulations promulgated by the Secretary pursuant to IGRA, *State of Florida and State of Alabama v. United States*, Case No. 4:99cv137-RH/WCS.  Ex. H, Order dated September 7, 2007.  These regulations allow the Secretary to authorize gaming activities in the absence of a compact - and in the absence of any determination that a state failed to negotiate for a compact in good faith - if the state has blocked federal litigation by invoking its Eleventh Amendment immunity.  *See*  25 U.S.C. 2710 (d) (7) (vii) and implementing regulations of 25 CFR part 291.  Three Indian tribes intervened as defendants in *State of Florida and State of Alabama,* including the Seminole Tribe of Florida.

*Id.* at 2. That action was dismissed on September 7, 2007. *Id.*

In November 2004, the Florida Constitution was amended to allow slot machines to be operated at pari-mutuel facilities in Broward and Dade Counties in Florida if voters approved them. Art. X s. 23, Fla. Const. (Permitting slot machines). On December 8, 2005, the Florida Legislature enacted implementing legislation after voters in Broward County accepted slot machines in Broward, and voters in Dade County rejected them. Fla. Stat., Ch. 551 (regulating slot machines). Under the legislation, non-Indian pari-mutuel facilities were authorized by the State to operate 6,000 slot machines in Broward County, the same County in which the Tribe has three Class II facilities currently in operation. *Id*.[1]

On July 4, 2007, the legislation was amended to allow an increase in the number of slot machines per facility to 2,000 slot machines (up from 1,500), increased operating hours from a maximum 16 hours per day to 18 hours on weekdays and 24 hours per day on weekends and holidays, and to allow the use of casino-wide progressive slots. *Id*.

On March 6, 2007, the Tribe filed suit in the United States District Court for the Southern District of Florida against the United States, the Department of the Interior, and Dirk Kempthorne in his capacity as the Secretary of the Interior demanding that the Secretary issue procedures in lieu of a compact under Department regulations. *Seminole Tribe of Florida v.*

[1]In a prior judicial ruling, Judge Marcus ruled the State of Florida had not violated IGRA's good faith requirement during the compact negotiations at that time because among other things slots machines were not permitted to any person or entity for any purpose. *Seminole Tribe of Florida v. Florida*, Case 91-6756-CIV-MARCUS, 1993 U.S. Dist. LEXIS 21387 at * 60 (S.D. Fla. Sept. 22, 1993),*vacated on jurisdictional grounds*, 517 U.S. 44 (1996). Now it cannot be questioned that the law of the State of permits slot machine gaming, such that slot machines are compactible games under IGRA.

*Kempthorne*, Case No. 07-60317-CIV (S.D. Fla. filed March 6, 2007).

Secretary Kempthorne sent letters to Governor Crist and Seminole Chairman Cypress on June 22, 2007, encouraging the State and the Tribe to enter into an agreement and emphasizing that such an agreement could come either in the form of Procedures or a compact, and gave the parties 60 days to reach an agreement. Ex. A, Letter from Kempthorne to Crist of 06/22/07.

Florida Governor Charlie Crist and Seminole Chairman Mitchell Cypress executed the Seminole Tribe of Florida and State of Florida Gaming Compact on November 14, 2007, to authorize the Tribe's conduct of Class III gaming activities in accordance with the IGRA. Ex. B, Signature page of compact.

By letter to Chairman Cypress dated November 14, 2007, the Department of the Interior's Deputy Assistant Secretary – Policy and Economic Development George Skibine confirmed receipt of the signed compact and that the Department's 45-day period for review under the IGRA would close on December 28, 2007. Ex. C, Letter from Skibine to Cypress of 11/14/07.

The Department of the Interior and the Tribe on November 15, 2007, filed a joint motion to stay the Procedures case in the Southern District of Florida for 60 days, pending Departmental review of the compact. The district court granted the stay noting that "if the compact is approved, the reason the instant action was brought disappears." Ex. D, Order of November 15, 2007, granting stay for 60 days.

On November 19, 2007, a Petition filed by Marco Rubio, Speaker of the Florida House of Representatives, seeking to invalidate the compact was filed in the Supreme Court of Florida. Ex. E, Declaration of Barry Richard. On November 26, 2007, the Supreme Court of Florida

issued an order directing the parties to address the issue of how the Secretary's 45-day deadline for approving the compact affected the court's review. Ex. F, Scheduling Order of November 26, 2007.

All parties in their response to this question agreed that the 45-day deadline for action would not affect the efficacy of any decision by the Supreme Court of Florida. Ex. E, Declaration of Barry Richard. The Supreme Court of Florida issued an order on December 7, 2007, setting oral argument in the case for January 30, 2008. Ex. G, Order of December 7, 2007, rescheduling oral argument.

On December 20, 2007, Gulfstream Park Racing Association, Inc. ("Gulfstream") filed a complaint for declaratory judgment in the United States District Court for the Northern District of Florida. In addition to filing the complaint, Gulfstream also filed a motion for preliminary injunction and temporary restraining order seeking a declaration that the compact entered into between the Tribe and the Governor of Florida was invalid and also seeking to enjoin the Secretary from publishing notice of the compact in the Federal Register. *Gulfstream Park Racing Assoc., Inc. v. Kempthorne, et al.*, Case No. 4:07cv540-RH-WCS.

On December 28, 2007, Judge Hinkle issued an order denying Gulfstream's request for a temporary restraining order. *See* Ex. I, Order Dated December 28, 2007. In his order, Judge Hinkle denied the motion for temporary restraining order on the basis that Gulfstream failed to establish that irreparable harm would result and for failure to establish a "likelihood of success on the merits on a claim for an injunction that would, as a practical matter, operate principally against a nonparty (the Seminole Tribe of Florida)." *Id*. at p. 2.

On December 31, 2007, the Department of the Interior, Bureau of Indian Affairs, sent a Notice of Deemed Approved Tribal - State Class III Gaming Compact to the Federal Register for publication. Ex. J, December 31, 2007, Notice; Ex. K, Declaration of Paula L. Hart ("Hart Dec."), ¶ 4.

**ARGUMENT**

**Introduction**

Plaintiff fails to meet the standards for injunctive relief which place the burden upon it to establish: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). A temporary restraining order is an extraordinary remedy for which a plaintiff bears the burden of proving the prerequisites by clear and convincing evidence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974); *Fund for Animals v. Frizzell*, 530 F.2d 982, 986 (D.C. Cir. 1976). In determining whether to grant an injunction, the courts have traditionally exercised judicial restraint:

> The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.

*Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970), *aff'd*, 405 U.S. 727 (1972) (quoting *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). Since Plaintiff's temporary restraining order request is "an extraordinary and drastic remedy," it must not be granted:

> unless movant "clearly carries the burden of persuasion" as to the

> four prerequisites. *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974). "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Id*. at 573.

*United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied*, 724 F.2d 978 (1984).

Plaintiff has no possibility of success on the merits. First, there is no subject matter jurisdiction because there is no waiver of sovereign immunity for this action. Indeed, there is none even alleged. The Declaratory Judgment Act is not a waiver of sovereign immunity. Moreover, there is no final agency action by the Department of the Interior to review. Plaintiff only alleges that the Secretary has followed the non-discretionary dictates of Congress as the remedy for his inaction to approve or not approve the compact and has sent notice of the compact between the Tribe and the Governor of Florida to the Federal Register for publication. Second, Plaintiff's request for injunctive relief is moot. The Secretary has sent the notice of compact to the Federal Register for publication. Pursuant to the Secretary's legislative authority, there is no further action that he may take. Third, Plaintiff cannot prevail because, under the compelling authority of *Kickapoo Tribe of Kansas v. Babbitt*, 43 F. 3d 1491 (D.C. Cir. 1995), the Tribe is an indispensable party to this action seeking declaratory relief that the gaming compact between the State of Florida and the Tribe is invalid. Fourth, if there was jurisdiction, Plaintiff could not state a claim for relief because it is alleged that the Secretary has done exactly what Congress has directed him to do when 45 days has passed with no action by the Secretary on approving or disapproving a tribal-state compact.

Plaintiff does not establish irreparable harm based upon "uncertainty" created by the

pendency of a case filed before the Florida Supreme Court.  First, Plaintiff's claims are

speculative.  Plaintiff claims that if the Florida Supreme Court rules the Governor does not have

the authority to enter into a compact, somehow Florida's interest in the state's gambling laws on

land in the state will be compromised.  The uncertainty of any harm alleged by Plaintiff is

highlighted by the fact that "[b]y this action, the Plaintiff expresses no opinion on the issues

pending before the Florida Supreme Court."  Complaint, ¶ 9.  Although the Florida Governor's

authority has been challenged, such a challenge does not rise to the level of certainty.  Rather, it

is just as likely the Florida Supreme Court may rule that the Governor has the authority to

execute the compact on behalf of the State.

   Second, the Plaintiff's concern that the state's laws may be compromised if the Governor

lacks authority is wholly meritless.  If, as alleged, a notice that the compact has been deemed

approved by operation of law is published, the compact takes effect only to the extent it is

lawful.  Third, any Class III gaming on Indian lands without a proper compact is not a violation

of any state law.  Class III casino gaming on Indian lands is exclusively the province of federal

law, not state law.  Finally, there is no allegation made in the complaint that the Tribe will be

engaging imminently in Class III gaming that the State finds impermissible.  Rather, the Tribe

has represented that the Secretary's publishing notice of the deemed approval of the compact

will not impact the proceedings before the Florida Supreme Court.

   The balance of harms and the public interest weigh heavily in favor of no injunction.

Congress has already directed what is to occur if the Secretary has not acted in 45 days.

Plaintiff's attempt to interfere with the administrative process is disruptive, as well as contrary to

Congress' will. No actual or theoretical harm results from publication of the notice in the Federal Register. It will not authorize any unlawful gaming. By contrast, preventing publication will delay the transfer of $50,000,000.00 to the public coffers of the State of Florida and will interfere with the sovereign undertakings of the Tribe despite the absence of them as a party. On balance, there can be no question that an injunction should be denied and this lawsuit should be dismissed.

**I. THE PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS AND THIS ACTION MUST BE DISMISSED.**

To demonstrate a substantial likelihood of success, Plaintiff is "required to present a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought." *Autoskill, Inc. v. National Educ. Support Sys., Inc.*, 994 F.2d 1476, 1486 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 307 (1993) (citations omitted). Plaintiff has no such likelihood because as will be discussed, jurisdiction does not lie to interfere pre-emptively with a prosecutorial decision. No waiver of sovereign immunity allows relief that would restrain the Federal Defendants from interfering with decisions on whether or not to take any enforcement actions. Even assuming, arguendo, that the Court has jurisdiction to entertain Plaintiff's claim for injunctive relief, Plaintiff still cannot prevail on the underlying merits of this action.

**A. THE COURT LACKS JURISDICTION TO ENTERTAIN A CHALLENGE TO THE SECRETARY'S SUBMISSION OF THE NOTICE TO THE FEDERAL REGISTER FOR PUBLICATION AS DIRECTED BY CONGRESS.**

Plaintiff fails to allege a proper jurisdictional basis for instituting suit against the Federal Defendants. It is elementary that the United States, as a sovereign, is immune from suit save as

it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. *Id*.; *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Therefore a court has no subject matter jurisdiction over the United States unless a specific statute waives its sovereign immunity, *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Such waiver must be "unequivocally expressed." *Mitchell*, 445 U.S. at 538; *United States v. King*, 395 U.S. 1, 4 (1969). The United States has not waived its sovereign immunity in this matter.

In the jurisdictional portion of the complaint, Plaintiff cites the Declaratory Judgment Act. Complaint ¶2. However, that Act, 28 U.S.C. §§ 2201, does not waive sovereign immunity. *King*, 395 U.S. at 5, 89 S. Ct. at 1503; *Morongo Band of Mission Indians v. California State Board of Equalization*, 858 F.2d 1376, 1382 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989) (finding the Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction, but does not constitute an independent basis for jurisdiction); *Cotter Corp. v. Seaborg*, 370 F.2d 686, 691-92 (10th Cir.1966) (affirming dismissal of action seeking declaratory judgment and injunction for failure of plaintiff to cite waiver of sovereign immunity with respect to federal defendants); *Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft*, 360 F. Supp.2d 64, 66 at n. 3 (D.D.C. 2004).[2] The Plaintiff must

---

[2]As the Tenth Circuit noted in *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994): “Whereas the APA confers jurisdiction in some cases, the Declaratory Judgment Act (DJA) does not itself confer jurisdiction on a federal court where none otherwise exists. [citations omitted]. Inasmuch as the APA does not confer subject matter jurisdiction on the district court, we hold the DJA inapplicable to this action. Therefore, the district court correctly concluded that it lacked subject matter jurisdiction to consider Henry's claims.”

demonstrate that the government has waived sovereign immunity for this claim. *See United States v. Testan*, 424 U.S. 392, 399 (1976).

The Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331; however, this statute does not waive sovereign immunity. Complaint ¶2. It is well established that statutes such as 28 U.S.C. § 1331 granting general jurisdiction do not waive sovereign immunity. *Fostvedt v. United States*, 978 F.2d 1201, 1202-03 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 1589 (1993); *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984). It is evident that not all civil cases that present federal questions are properly brought pursuant to this provision. *See Guam v. Olsen*, 431 U.S. 195, 202 (1977). Section 1331 has never been construed as a waiver of sovereign immunity of the United States from suit. *Kentucky v. Ruckelshaus*,, 362 F. Supp. 360, 367-368 (W.D. Ky. 1973), *aff'd*, 497 F.2d 1172 (6th Cir. 1974). *See Cheyenne-Arapaho Gaming Commission v. National Indian Gaming Commission*, 214 F. Supp. 2d 1155,1162 (N.D. Okla. 2002); *Western Shoshone Business Council, For and on Behalf of Western Shoshone Tribe of the Duck Valley Reservation v. Babbitt*, 1 F.3d 1052, 1058-59 (10th Cir. 1993). Further, the burden of proving the existence of the requisite jurisdiction is on the party alleging jurisdiction. *Gibbs v. Buck*, 307 U.S. 66, 72 (1939). This the Plaintiff has failed to do. [3]

---

[3]Plaintiff has not alleged a claim under the Administrative Procedures Act, 5 U.S.C. §§ 701-06 (APA), nor could it do so. *See* Complaint. There has been no final agency action. Before the APA can be used as a basis for judicial review, Plaintiff bears the burden of identifying a final agency action taken by Federal Defendants. Courts are not authorized to review agency policy choices in the abstract. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18-22 (D.C. Cir. 2006). In the absence of a specific statutory review provision, the APA provides a cause of action to "[a] person suffering legal wrong because of an *agency action*, or adversely affected or aggrieved by *agency action*." *Id*.; *see also* 5 U.S.C. § 702 (emphasis added).

**B. THE SEMINOLE TRIBE IS AN INDISPENSABLE PARTY.**

This lawsuit directly affects the interests of the Tribe in critical respects. This action focuses on an effort to invalidate the compact entered into between the Tribe and the State of Florida. Plaintiff challenges the validity of the compact by asserting that the compact "is invalid as a matter of federal law." Complaint ¶¶ 1, 10. Plaintiff is seeking a declaratory judgment declaring the compact to be invalid and a restraining order prohibiting the Secretary from publishing the notice in the Federal Register pursuant to the directives set forth by Congress in the IGRA.

Essentially, Plaintiff is asking this Court to undermine the legal validity of the compact in the absence of one of the parties to that compact. As a party to the compact, the Tribe has a compelling interest in any action designed to invalidate that compact, making it a necessary party to this suit. Therefore, this suit should not proceed in its absence. However, the Tribe's status as a sovereign party means that it cannot be joined as a party. Thus, the Tribe's status as a necessary, yet indispensable party, dictates that this lawsuit be dismissed.

**1. <u>The Seminole Tribe of Florida is a Necessary Party.</u>**

---

"Review under the APA is further limited to a '*final agency action'* for which there is no other adequate remedy in a court.'" *Fund for Animals*, 460 F.3d at 18 (quoting 5 U.S.C. §704) (emphasis added). "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Id*. Moreover, the long-standing practice of the D.C. Circuit is "to require the complaining party to challenge the specific implementation of the broader agency policy." *Fund for Animals*, 460 F.3d at 22. In fact, it is the lack of agency action that Plaintiff conjectures triggered the ministerial duty to publish. Plaintiff's rights or obligations have not matured to the point at which *any* legal consequences will flow. Because Plaintiff cannot establish the requisite waiver of sovereign immunity, this Court lacks subject matter jurisdiction and the complaint should be dismissed.

"Rule 19 of the Federal Rules of Civil Procedure establishes a two-step procedure for determining whether an action must be dismissed because of the absence of a party needed for a just adjudication." *Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1495-96 (D.C. Cir. 1997). Rule 19(a) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Rule 19(b) provides that if such a person cannot be made a party, the court must determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed; the absent person thus being indispensable. Fed. R. Civ. P. 19(b). In making such a determination, the factors to be considered by the court include:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Therefore, the court must first determine "whether the absent party is 'necessary' to the litigation according to [the] factors enumerated in Rule 19(a)." *Cherokee Nation of Oklahoma*,

117 F.3d at 1496. Then, if a necessary party cannot be joined, the court must examine the factors in 19(b) to "determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable." *Id.*

In determining whether a party is necessary, the following three factors are considered:

> (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

*Mescalero Apache Tribe*, 131 F.3d at 1383.

Based on the above factors, the Tribe is a necessary party to this action. The Seminole Tribe of Florida Compact is a contract. *Texas v. New Mexico*, 482 U.S. 124, 129 (1987). In *Roos v. Texas Co.*, 23 F.2d 171, 172 (2d Cir. 1927), *cert. denied*, 277 U.S. 587 (1928), Judge Learned Hand set out the general rule that all parties to a contract must be present in a suit where the contract's validity is questioned. In addition, Indian tribes routinely have been deemed necessary parties to actions touching upon their property and contractual interests. *Enterprise Management Consultants v. United States, ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989).

This lawsuit seeks to have the compact declared invalid and seeks to enjoin the Secretary from performing his ministerial duties. The Plaintiff has more than questioned the validity of the compact and seeks to enjoin its implementation, which directly impacts the Tribe's contractual interests. This is the quintessential situation to which Rule 19 applies:

> No procedural principle is more deeply embedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.

*Fluent v. Salamanca*, 928 F.2d 542, 547 (2d Cir. 1991) (citing *e.g.*, *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1985)) *accord United States v. Creative Games Technology, Inc.*, 1994 WL 320296 (8th Cir. 1994)[4] ("it is simply inconceivable to us that a suit claiming that a contract is invalid should be allowed to proceed in the absence of all parties to the contract").

The second part of Rule 19(a)(2), sub-part (ii), also independently confers necessary party status on the Tribe. Any relief granted to the Plaintiff would surely be opposed by the Tribe. If the Tribe was to bring its own action challenging the Government's actions related to the validity of the compact, this Court's decision would not serve as a bar because it is not party to this lawsuit. A separate action on the same issues could be initiated by the Tribe (possibly in a different Circuit, raising the prospect of a differing view on the merits and a differing judicial outcome). Thus, Federal Defendants are existing parties who are subject to a substantial risk of inconsistent obligations or judgments. The elements of Rule 19(a)(2)(ii) are plainly met under this scenario.

In addition, as the Court of Appeals for the D.C. Circuit has made abundantly clear, a party to a Tribal-State Compact under the IGRA is a necessary party to this adjudication:

> Clearly, as the district court assumed, the State of Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief that the Tribe seeks. Thus, Kansas is a necessary party under Rule 19(a).

*Kickapoo Tribe of Indians*, 43 F.3d at 1495; *Dewberry v. Kulonugoski*, 406 F. Supp. 2d 1135,

---

[4]Rule 19(a) inquires only as to whether the absent party has "a claim to interest," regardless of the ultimate validity of that claim. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Here, the Tribe's interest is indisputable.

1146 (D. Oregon 2005) (court dismissed challenge to a Tribal-State compact with the State of Oregon on grounds of indispensable party).

The Tribe, like the State of Kansas in *Kickapoo Tribe of Indians*, as a party to the compact at issue, has an interest in the validity of the compact. Plaintiff is seeking to have the compact declared to be invalid for uncertainty, which would directly affect the Tribe's interests. Thus, the Tribe is a necessary party to this lawsuit; with a compelling interest in the validity of the compact at issue, which is directly affected by the relief the Plaintiff seeks.

**2. The Seminole Tribe of Florida Cannot be Joined in This Action Because of Its Sovereign Immunity.**

Although a necessary party, the Tribe cannot be joined in this action due to its sovereign immunity. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). Thus, "absent tribes, while necessary, cannot be joined due to their sovereign immunity." *Shermoen*, 982 F.2d at 1318. [5]

**3. This Lawsuit Cannot Proceed "in Equity and Good Conscience" Without the Seminole Tribe of Florida Because It is an Indispensable Party.**

The Tribe is not only a necessary party under Rule 19(a), it is also an indispensable party due to its sovereign immunity.

Rule 19(b), as set out above, lists four factors to be balanced in determining whether a

[5] The possibility that the Tribe could waive its sovereign immunity and intervene in this action, or participate by filing an amicus brief, is irrelevant to Rule 19 analysis. *Confederated Tribes of the Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1500 (9th Cir. 1991); *Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 775.

party is indispensable and whether an action should proceed or be dismissed. However, recent case law -- especially that dealing with Indian tribes and states -- makes clear that application of these factors is severely truncated when the necessary party cannot be joined due to immunity. "It has been held that when an indispensable party is immune from suit, there is very little room for balancing of other factors set forth in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent*, 928 F.2d at 548 (citations omitted)*; Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 768; *Id.*, 788 F.2d at 765, 777 & n.13; *Enterprise Management Consultants*, 883 F.2d at 894; 3A *MOORE'S FEDERAL PRACTICE*, ¶ 19.15 at p. 19-266 n.6 (2d ed. 1994). As the Second Circuit has explained:

> The rationale behind the emphasis placed on immunity in the weighing of Rule 19(b) factors is that the case is not one where some procedural defect such as venue precludes litigation of the case.

*Fluent*, 928 F.2d at 548 (citation omitted). Thus, the Court's discretion is narrowed because of the importance of the Tribe's immunity, resulting in consideration of the factors in 19(b) being peripheral. Hence, the Tribe, as an indispensable party to the compact, coupled with its sovereign immunity, compels the dismissal of this lawsuit.

Consequently, given the Tribe's sovereign immunity, the factors set out in Rule 19(b) need not be applied. However, even if the factors were applied, they would dictate dismissal of this action.

**a. A Judgment Rendered in This Matter Would Substantially Prejudice the Seminole Tribe of Florida.**

The first factor is essentially the same as the inquiry under Rule 19(a), which involves determining whether continuing the action without the party's presence would impair its ability

to protect its interest. *Enterprise Management Consultants*, 883 F.2d at 894 n.4; *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994); *Confederated Tribes*, 928 F.2d at 1499.

A judgment for the Plaintiff in this case would result in a declaration that the compact is invalid. This impact cannot be overcome by any suggestion that the United States could adequately represent the Tribe's interests. First, the Tribe is presently suing the Secretary in the Southern District of Florida for the alleged failure to act under IGRA to issue procedures in lieu of a compact that would authorize Indian gaming. Second, IGRA "cannot be fairly interpreted as imposing fiduciary obligations." 932 F. Supp. 1284, 1298 (D.N.M. 1996), *aff'd* 104 F.3d 1546 (10th Cir. 1996). "Nothing in [IGRA] indicates any intention by Congress to recognize or create a fiduciary duty. The Act does not create a situation in which the federal government holds resources in trust for the Indians." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. U.S.*, 259 F. Supp.2d 783, 791 (W.D. Wis. 2003) (citing *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1201 (D. Minn. 1996)); *Pueblo of Santa Ana*, 932 F. Supp. at 1298; *United States v. 1020 Electronic Gambling Machines*, 38 F. Supp. 2d 1213, 1216 (E.D. Wa. 1998) ( "there is no basis for imposing specific trust duties upon the United States due to the Secretary's role in Indian gaming."). Third, the Secretary's role in the IGRA approval process precludes him from adequately representing the Tribe. The Secretary is not in a position to advocate tribal interests when evaluating the compact as a neutral under the discretionary authority given by Congress to choose whether to act to approve or disapprove on the basis, among other things, of whether the compact is consistent with IGRA and other federal law. 25 U.S.C. § 2710 (d)(8)(B)(i) and (ii). Finally, the Tribe's "interest . . . in their sovereign right not

to have their [contractual rights] judicially determined without consent is an interest which the United States' presence in [the suit] cannot protect." *Enterprise Management Consultants*, 883 F.2d at 894.

Thus, in view of the relief requested by Plaintiff and the Tribe's interest in the validity of the compact provisions, there is no way the Court can avoid prejudice to it. *Kickapoo Tribe*, 43 F.3d at 1498.

Moreover, the prejudice to the Plaintiff due to the publication of the notice is non-existent. The compact is approved only to the extent that the provisions are consistent with IGRA. If the Florida State Supreme Court determines that the Governor did not have the authority to enter into the compact, the compact would not be consistent with the provisions of IGRA requiring that a compact be entered into between a state and a tribe. *See Kickapoo Tribe v. Babbitt*, 827 F. Supp. 37, 44-45 (D.D.C. 1993); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1996) (court ruled a compact void where affirmative approval was given by the Secretary; here, the Secretary gave neither affirmative approval or disapproval).

**b. The Prejudice to the Seminole Tribe of Florida Cannot be Lessened or Avoided by Protective Provisions in the Judgment or the Shaping of Relief.**

The prejudice to the Tribe cannot be lessened or avoided in this action due to the nature of the relief requested by Plaintiff. While the Tribe could waive its sovereign immunity and intervene in this action, it has chosen not to do so. In that regard, the D.C. Circuit Court has stated that the "[f]ailure to intervene is not a component of the prejudice analysis where

intervention would require the absent party to waive sovereign immunity." *Id*.

In addition, the Ninth Circuit Court of Appeals, in a case brought by a member of the Navajo Nation challenging federal approval of a settlement agreement, determined that "prejudice to the Navajo Nation and Hopi Tribe could not be effectively minimized because relief" for the plaintiff could not be effectively shaped, in the absence of the Navajo Nation and Hopi Tribe, "to avoid prejudice to their interests." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) (prejudice not lessened if tribes required to intervene and waive sovereign immunity)).

No protective provisions of the judgment could be fashioned to protect the Tribe's interests. "[A]ny relief that [Plaintiffs] obtain in this case will have an inevitable effect on the[m]." *Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 776.

**c. A Judgment Rendered in the Seminole Tribe of Florida 's Absence Will not be Adequate.**

A judgment by this Court cannot be adequate given the absence of the Tribe and the prospect of a separate suit if the Plaintiff prevails. Judge Stanley articulated this concern in *Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990):

> And, again, if the Band is unable to represent itself in this action and the Plaintiff were to obtain a favorable judgment, the Band likely would bring a new lawsuit against the Secretary. After all, in considering the adequacy of the judgment, the Court must consider "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," *Provident Tradesmens Bank & Trust Company v. Patterson*, 390 U.S. 102, 111(1968), and in this case, further litigation could be anticipated.

It is foreseeable that in the event of a judgment in favor of Plaintiff in this matter, the

Tribe would bring suit against the Federal Defendants, likely with the Eleventh Circuit. In addition, a judgment rendered in favor of Plaintiff will adversely affect the Tribe's interests in the compact, causing the Tribe to lose the benefit of the compact. Thus, any judgment rendered in its absence will not be adequate.

**d. Dismissal of This Action is Still Appropriate Even if There is no Alternative Forum Available to Plaintiff.**

Finally, dismissal of the suit is still the appropriate remedy even if there is no alternative forum. *Quileute Indian Tribe*, 18 F.3d at 1560-61; *Lomayaktewa v. Hathaway*, 560 F.2d 1325, 1327 (7th Cir. 1977); *Confederated Tribes*, 928 F.2d at 1500. A plaintiff's interest in litigating a claim is outweighed by a tribe's and state's interests in maintaining their sovereign immunity, and "dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Quileute Indian Tribe*, 18 F.3d at 1461; *Wichita and Affiliated Tribes of Oklahoma*, 788 F.2d at 777; *Enterprise Management Consultants*, 883 F.2d at 894; *Shermoen*, 982 F.2d at 1320. In the context of an IGRA challenge to compel a compact in which the tribe was present but the state was not, the D.C. Circuit made it abundantly clear that the dismissal was appropriate:

> ... Kansas' indispensability as a party in the Tribe's lawsuit is hardly a formality; not only its contractual rights are at issue but its fiscal interests are also potentially at stake. *See State v. Finney*, 836 P.2d at 1176. Moreover, it was both a necessary party under Rule 19(a) and immune from suit, thereby cabining the district court's discretion to consider factors under Rule 19(b). *See Wichita & Affiliated Tribes*, 788 F.2d at 777 n.13 (citation omitted).

*Kickapoo Tribe v. United States*, 43 F.3d at 1499; *see also American Greyhound Racing, Inc. v.*

*Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002).

### C. THE STATUTE PROVIDES THE EXPLICIT REMEDY FOR NOT TAKING OFFICIAL ACTION AND REQUIRED PUBLICATION.

The Plaintiff does not assert that the Secretary has taken any unlawful action. The Plaintiff does not allege that the Secretary should have disapproved the compact. In fact, the Plaintiff does not take a position at all over whether the Governor does or does not have the authority to enter into a compact. Instead, the Plaintiff seeks an advisory opinion before the Florida Supreme Court issues a decision on the action currently before it. Through this action, the Plaintiff seeks to have the Secretary ignore the plaint text of IGRA that required him to send the notice of the compact to the Federal Register for publication.

The Plaintiff appears to be acting on a misconstruction of the relevant law. The Plaintiff makes the bald assertion that the publication of the compact, which was deemed approved by operation of law under 25 U.S.C. §2710(8)(c) on December 29, 2007, imparts validity on a compact if it turns out that the compact is subsequently deemed invalid. In an effort to prevent the publication of what it deems to be an invalid compact without the benefit of a final determination by the Florida Supreme Court, the Plaintiff seeks to impose its own judicial remedy. The Plaintiff is wrong. It is not up to the Plaintiff to make this determination. Rather, IGRA provides the statutory remedy for Secretarial inaction on a proposed compact if for any reason the Secretary does not act. The Plaintiff's efforts to undo the Secretary's ministerial duties was explicitly rejected by Judge Lamberth in *Kickapoo Tribe*, 827 F. Supp. at 44.

If the Secretary wanted to hold that Gov. Finney's approval was insufficient to

> form a compact, he could have done so. However, to do so, he had a statutory obligation to disapprove the compact for a legally valid reason under § 2710(d)(8)(B) within forty-five days of the submission of the compact. **In short, the statute does not allow for tolling due to uncertainty within the Department of Interior.** Therefore, the Secretary's determination that the forty-five day approval period was tolled until the Supreme Court of Kansas handed down its ruling in Finney is contrary to unambiguous law and deserving of no discretion from the court.

(Emphasis added). *Kickapoo Tribe*, 827 F. Supp. at 44, *rev'd on other grounds*, 43 F. 3d 1491 (D.C. Cir. 1995) (Circuit Court held absent party to Tribal-State compact indispensable)**.**

The Plaintiff addresses the likelihood of success on the merits in one short paragraph. It cites one case, *Pueblo Santa Ana v. Kelley*, 104 F.3d 1546, 1557 (10th Cir. 1997), and not for the proposition that the Secretary acted unlawfully by providing notice to the Federal Register for publication. The reason, we submit, for the short shrift given by the Plaintiff to its burden to establish a likelihood of success on the merits is that there is no authority for a proposition lacking such merit.

The Secretary is directed by the statute to publish in the Federal Register every notice of any "Tribal-State compact that is approved or considered to have been approved." 25 U.S.C. § 2710(d)(8)(D).

> The IGRA explicitly grants Defendants discretion to do one of three things when asked to review a tribal-state compact. Defendants may approve the compact; disapprove the compact; or take no action with respect to the compact. 25 U.S.C. § 2710(d)(8). If the last option occurs, the compact is deemed to be approved, but only to the extent it is consistent with the provisions of the IGRA. *Id*.

*Pueblo of Pojoaque v. Norton*, Civ. 03- 713 BB/LFG, slip op dated February 10, 2004 at 8 (*see* Ex. H); *Kickapoo Tribe*, 827 F. Supp. at 46. IGRA gives authority to the Secretary to approve a

compact. Specifically:

> The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

25 U.S.C. § 2710(d)(8)(A) (emphasis added). "The Secretary may disapprove a compact described in subparagraph (A)" only if such compact violates -

> (i) any provision of this Act,
>
> (ii) any other provision of federal law that does not relate to jurisdiction over gaming on Indian lands, or,
>
> (iii) the trust obligations of the United States to Indians.

25 U.S.C. § 2710(d)(8)(B) (emphasis added).

The statute gives the Secretary only 45 days to decide whether to approve or to disapprove. The statute provides a very specific remedy if the Secretary does not act within that time period. As contrasted with the "may" language used to allow the Secretary to disapprove a compact, if the Secretary does not act within 45 days, "the compact shall be considered to have been approved by the Secretary." 25 U.S.C. § 2710 (d)(8)(C) (emphasis added). The statute again provides mandatory language that: "The Secretary shall publish in the Federal Register notice of any Tribal-State compact that is approved, or considered to have been approved, under this paragraph." 25 U.S.C. § 2710 (d)(8)(D).

It is clear that Congress did not mandate that the Secretary disapprove a compact for every defect the Secretary might find. Instead, Congress gave the Secretary the authority to approve and the permissive right to disapprove. It cannot be doubted that Congress expressly

gave the remedy for inaction by the Secretary under this provision of the statute. If the Secretary does not act within 45 days, for whatever reason, "the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter." 25 U.S.C. § 2710 (d)(8)(C).

Agency inaction may be reviewable under APA where it constitutes " 'agency recalcitrance ... in the face of a clear statutory duty ... of such magnitude that it amounts to an abdication of statutory responsibility'. " *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) (citation omitted). But where Congress has statutorily addressed the result of the inaction, no separate declaratory judgment remedy, or even an APA remedy can be available. "As [the Supreme Court] stated in *Transamerica Mortgage Advisors, supra* , 'it is an elemental canon of statutory construction that where a statute provides a particular remedy or remedies, a court must be chary of reading others into it.'" 444 U.S. at 19; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 571-4 (1979). In the absence of strong indicia of a contrary Congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Auth. v. Sea Clammers*, 453 U.S. 1, 14-15 (1981).

Any direction to not publish despite inaction runs contrary to the statute. After the 45-day period, the Secretary's actions are specifically directed by the statute. The status of the compact is defined and limited by statute after inaction for any reason. The Secretary is to publish the notice of approval in the Federal Register and the Compact "shall take effect." 25 U.S.C. §§ 2710 (d)(3)(B) and 2710 (d)(7)(C). Here, the Secretary has done that. By operation of law, the compact was deemed approved on December 29, 2007. On December 31, 2007, the

Secretary sent notice to the Federal Register that the compact was deemed approved and was to be published. *See* Ex. K, Hart Dec., ¶ 4. No further action is required by the Secretary to effect publication of the notice. Plaintiff's injunctive request is moot because there is no further action that can be enjoined. "Congress imposed an absolute forty-five day deadline" after which a compact is deemed approved even if the compact is legally invalid. *Kickapoo Tribe*, 827 F. Supp. at 43-44. l *Id*. As Judge Lamberth noted:

> The omission of any type of tolling provision is certainly not an oversight on the part of Congress. By including the forty-five day limitation, Congress clearly was attempting to ensure that the Secretary would not be able to delay approval of Tribal-State compacts indefinitely, thus frustrating Congress' intent with IGRA. (Congress has all too often seen its goals left unobtained due to dilatory action on behalf of individuals in the executive branch.) If the Secretary was allowed to postpone action every time there was uncertainty as to some issue in IGRA or in a compact, the Secretary would be able to forestall approval of compacts indefinitely. Rather than allow this, Congress imposed an absolute forty-five day deadline, a deadline defendants failed to meet in this case.

*Id*. at 44 n. 12. The Secretary is not allowed to postpone publication of the notice after the expiration of the 45 day review period. In this instance, he did not do so. The 45 days expired and the Secretary caused notice of the compact to be delivered to the Federal Register for publication as required by law. No further action is required to effect publication. Ex. K, Hart Dec., ¶ 5. Therefore, there is no injunctive relief that the Plaintiff may seek.

## II. PLAINTIFF HAS NOT DEMONSTRATED ANY IRREPARABLE INJURY.

Plaintiff fails to show that it would be irreparably injured if its motion for temporary restraining order was denied. When a party seeks injunctive relief, it must demonstrate an immediate and irreparable harm that justifies the exercise of a court's equitable powers prior to a

trial on the merits. *Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674

(D.C. Cir. 1985). The burden of justifying interim relief lies with the movant, and threatened,

speculative harm does not amount to irreparable injury for purposes of justifying an injunction.

*Wisconsin Gas Co.*, 758 F.2d at 674 (the alleged injury "must be both certain and great; it must

be actual and not theoretical. Injunctive relief 'will not be granted against something merely

feared as liable to occur at some indefinite time.'") (quoting *Connecticut v. Massachusetts*, 282

U.S. 660, 674 (1931)).

The Plaintiff articulates no concrete irreparable harm. While Plaintiff addresses concepts

of separation of powers and the ability to enforce its laws, such abstract interests are all

theoretical and conjectural, premised on the possibility that the Florida Supreme Court will rule

against the Governor and determine that he does not have the authority to obligate the State to

the compact. The fear or possibility is not enough to establish actual harm. Indeed, in this

action the Plaintiff does not even take the position that the Governor does not have the authority

to enter into the compact. Complaint, ¶9. In fact, Plaintiff disavows taking any position on the

merits of the action. "By this action, the Plaintiffs expresses no opinion on the issues pending

before the Florida Supreme Court." *Id*.

Thus, the injury is entirely speculative and conjectural based upon what the Florida

Supreme Court may or may not rule. The Plaintiff claims that if the Florida Supreme Court rules

the Governor does not have the authority to enter into a compact, somehow Florida's interest in

the state's gambling laws on land in the state will be compromised. Just as likely, the Florida

Supreme Court may rule the Governor has the authority, and Plaintiff's abstract and theoretical

"harms" may never transpire.

Second, Plaintiff's concern that the state's sovereignty or state laws may compromised if the Governor lacks authority is wholly without merit. First, gaming on Indian lands is controlled by Federal law, not state law.[6] The court found in *United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170 (10th Cir. 1991), that in enacting IGRA Congress intended to provide a comprehensive mechanism for governing State assertions of jurisdiction, and that IGRA was intended to "expressly preempt the field in the governance of gaming activities on Indian lands." *Id.* at 1179 (quoting S. Rep. No. 100- 446 at 6 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3075-76. 18 U.S.C. §1166(d) (section 23 of IGRA) operates "to preserve the delicate balance of power between the States and the tribes," *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 722 (9th Cir. 2003), *cert. denied*, 125 S. Ct. 51 (2004), by providing that States may assert enforcement authority in Indian country only through a compact negotiated with a Tribe.

State exercise of other types of enforcement authority would undercut Congress's intent

---

[6]The District Court and Appellate Court opinions in *Comanche v. United States*, 393 F. Supp. 2d 1196, 1205 (D. Okla. 2005) in no way support the Plaintiff's contention that there is irreparable harm to state sovereign interests. That case involved one tribe securing the approval of a compact on Indian lands claimed to be within the sovereignty and control for Indian gaming purposes of the other tribe. Here there is no dispute that for Indian gaming purposes the land in question is the Seminole Tribe of Florida's, and absent a compact, the State of Florida has no sovereign authority with respect to the regulation, control, and enforcement of Indian gaming activities. In *Kansas* v. *United States*, 86 F. Supp. 2d 1094, 1100 (D. Kan. 2000), *aff'd*, 249 F.3d 1213 (10th Cir. 2001), the question was whether the parcel in question was Indian lands for the purpose of IGRA. Here there is simply no issue presented on whether the lands which are the subject of the Tribal-State compact are Indian lands or whether IGRA applies to the lands. The State of Florida cannot claim sovereignty over these lands for Indian gaming purposes.

that State enforcement be channeled through negotiated compacts. Congress made the limited role of States clear in IGRA's legislative history, describing the compacting process, and then stating: "In no instance, does [IGRA] contemplate the extension of State jurisdiction or the application of State laws for any other purpose." S. Rep. 100-446 at 6. The Plaintiff is fully aware of the limitations on the application of state laws and policies on gaming. The Eleventh Circuit, in granting a motion to dismiss an action by the State of Florida against the Seminole Tribe of Florida, stressed:

> The legislative history of IGRA indicates that Congress, in developing a comprehensive approach to the controversial subject of regulating tribal gaming, struck a careful balance among federal, state, and tribal interests. See S.Rep. No. 100-446, at 5-6 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3074-76. **A central feature of this balance is IGRA's thoroughgoing limits on the application of state laws and the extension of state jurisdiction to tribal lands. *See id.***

*Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1247 ( 11th Cir. 1999) (Emphasis added). Any unlawful class III gaming done under an invalid compact is a violation of federal not state law, subject to the enforcement authority of the Attorney General and the NIGC, and the theoretical injury to state interests are not interests recognized by Congress.

Second, the publication of notice that the compact has been deemed approved by operation of law authorizes no Class III gaming if the Governor has no authority. By the operation of law, the compact is deemed approved only to the extent that it is consistent with IGRA. A similar issue was addressed in *Kickapoo Tribe of Indians v. Babbitt*, 827 F. Supp. 37, a case involving a compact between the Governor of Kansas and the Kickapoo Tribe to allow gaming. The Secretary of the Interior ratified the compact but the District Court observed, "[t]he

fact that the compact is deemed approved, however, does not mean that the compact necessarily is binding and operational. Rather, as defendants next argue, even if the compact is deemed approved, it nonetheless may be void if the Governor's inability to bind the State of Kansas renders the compact invalid." 827 F. Supp. 37, 44 (D.D.C.1993), *rev'd on other grounds,* 43 F.3d 1491 (D.C. Cir. 1995). The court concluded that the compact was not binding, even though it was deemed approved by operation of statute. *Id.* at 46. The Tenth Circuit followed this reasoning in a case in which the Secretary approved the compacts. *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1554-55 (10th Cir.1997). In this case, the Plaintiff alleges that certain gaming provided by the compact may not be compactable because it is unlawful to all in the state and thus not lawful with IGRA. But that allegation does not take into consideration the fact that the compact is deemed approved by operation of law but only to the extent is consistent with the provisions of IGRA.

Plaintiff utterly fails to demonstrate that it will actually suffer any actual harm. It is clear that no presumption of irreparable injury exists. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). This failure is sufficient grounds by itself for the Court to deny Plaintiff's motion. *Smith, Bucklin & Assoc. v. Sonntag*, 83 F.3d 476, 477 (D.C. Cir. 1996) (affirming district court refusal to issue preliminary injunction where plaintiff failed to demonstrate irreparable harm); *CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C. Cir. 1995) ("Because CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction]."). Because Plaintiff has not

established that there is a concrete threat of irreparable harm in the absence of a preliminary injunction, its motion should be denied.

## III. AN INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST AND THE BALANCE OF HARMS FAVORS DENIAL OF EMERGENCY RELIEF.

A party moving for a temporary restraining order and injunctive relief carries a particularly heavy burden where, as here, the result of the preliminary injunction is to impede the orderly administration of a governmental responsibility intended to serve the public interest. *See Yakus v. United States*, 321 U.S. 414, 440 (1944). In *Committee of Central American Refugees v. INS*, 795 F.2d 1434 (9th Cir. 1986), the court criticized the notion of interfering, at a preliminary injunctive stage, into discretionary ongoing government functions. In *Central American*, the administrative process at issue was an INS decision as to where to incarcerate deportable aliens. The Ninth Circuit noted that judges should be "guided by the prudential barriers to judicial review of executive decisions. . . ." 795 F.2d at 440. *See also Sampson v. Murray*, 415 U.S. 61, 83 (1974) (in affirming the denial of injunctive relief against the federal government, court expressed palpable concern as to "the obviously disruptive effect which the grant of the temporary relief . . . [would] have on the administrative process" and "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'") (quoting (*Cafeteria Workers v. McElroy*, 367 U.S. 886, 896 (1961)). Here, the public interest is not served by interfering with an ongoing administrative process. Indeed, the public interest will be furthered if judicial resources are reserved until such time as a final decision or inaction occurs.

The harms to the Plaintiff are really non-existent.  This action is premised on the possibility that the Governor will not prevail before the Florida Supreme Court even though it appears the Plaintiff has not taken a position in that court or here on the merits of the Governor's position.  Plaintiff claims harm to its sovereign interests in controlling illegal activity on Indian lands.  Yet, it is not the State of Florida's role or within its authority to regulate, control, or take enforcement against gaming on Indian lands.

Moreover, the Plaintiff does not claim that illegal gaming will imminently occur as a result of the notice in the Federal Register.  And, in fact and law, the notice in the Federal Register does not authorize unlawful gaming, and will not buttress a void compact if the Governor has no authority.  By contrast, the Plaintiff ignores the sovereign interests of the Tribe over its tribal lands –interests respected in IGRA.  The Plaintiff's balancing also neglects to recognize the public uses and benefits that could would occur as a result of the payments to the State of the $50,000,000.

Congress has articulated the explicit remedy for inaction by the Secretary.  In effect it has already weighed the public interest.  It directed publication in the Federal Register, which the Secretary has requested.  Congress limited the approval of the compact, where there is no action on a compact, to provisions that are consistent with IGRA.  There is no further action that the Secretary may take to effect publication of the notice.  Allowing the administrative process to conclude, as dictated by Congress, furthers the public interest as articulated by Congress, and promotes an orderly administrative process.  There is no relief that may be granted to the Plaintiff.  Its motion for emergency injunctive relief only serves to disrupt the administrative

process and furthers no public interest.

Accordingly, the public interest and the balance of harms favors denial of Plaintiff's Motion for a Temporary Restraining Order.

**CONCLUSION**

Based on the aforementioned, Federal Defendants respectfully request that their Motion to Dismiss be granted and Plaintiff's Motion for a Temporary Restraining Order be denied.

Dated: January 3, 2008

Respectfully submitted,

RONALD J. TENPASS
Assistant Attorney General
Environment & Natural Resources Division

By: /s/ Jody H. Schwarz
JODY H. SCHWARZ DC Bar # 493998
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0468
Fax: (202) 305-0506

EDWARD J. PASSARELLI VA Bar # 16212
Assistant Chief
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0468
Fax: (202) 305-0506

Attorneys for Federal Defendants

Of Counsel:
ANDREW S. CAULUM
Office of the Solicitor
U.S. Department of the Interior
Wi. Bar No. 1023019



THE SECRETARY OF THE INTERIOR

WASHINGTON

JUN 22 2007

The Honorable Charlie Crist
Governor of Florida
Tallahassee, Florida 32399

Dear Governor Crist:

During my meetings with you and representatives of the Seminole Tribe regarding Class III gaming on the Seminole Reservation, I was encouraged by the commitment exhibited by both parties to reach a resolution that would allow the Tribe to engage in Class III gaming.

The Indian Gaming Regulatory Act and the Department of the Interior's Procedure Regulations were drafted to encourage states and tribes to negotiate agreements that meet both sovereigns' needs. I am reluctant to impose the Federal Government's procedures on the parties if there is an opportunity for an agreement. This agreement can come in the form of procedures or a compact. My goal is for the State of Florida and the Seminole Tribe to reach an agreement. In my view, an agreement negotiated between two sovereign entities is always preferable to a result imposed by the Federal Government.

At this point, I can best assist the parties by setting a timetable for the parties to follow. I request that the Tribe and the State report to Carl Artman, Assistant Secretary – Indian Affairs, in 60 days on the agreement reached. Given my confidence in your ability to reach an agreement, I will stay further action during this time to allow this discussion and resolution. If the parties do not reach an agreement on all or most of the outstanding issues within the next 60 days, I will review my options at that time.

I look forward to working with the Seminole Tribe and the State of Florida to expeditiously resolve this important matter to the mutual benefit of both parties. A similar letter is being sent to Chairman Mitchell Cypress.

Sincerely,

DIRK KEMPTHRONE

TOTAL P.02

disability/handicap, or marital status. Nothing herein shall preclude the Tribe from giving preference in employment, promotion, seniority, lay offs or retention to members of the Tribe and other federally recognized tribes.

PART XIX. EXECUTION

By signing this Compact, the Governor of the State of Florida affirms that he has authority to act for the State in this matter and no further action by the State or any State official is necessary for this Compact to take effect upon approval by the Secretary of the Interior and publication of the notice of approval in the Federal Register or by operation of law under 25 U.S.C. § 2710(d)(7)(C). The Governor also affirms that he will take all appropriate steps to effectuate its purposes and intent. The undersigned Chairman of the Tribal Council of the Seminole Tribe of Florida affirms that he is duly authorized and has the authority to execute this Compact on behalf of the Tribe. The Chairman also affirms that he will take all appropriate steps to effectuate its purposes and intent.

APPROVED:

State of Florida

Charlie Crist
Governor

Date: November 14, 2007

Seminole Tribe of Florida

Mitchell Cypress
Chairman of the Tribal Council

Date: November 14, 2007



# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

NOV 14 2007

The Honorable Mitchell Cypress
Chairman, Seminole Tribe
6300 Stirling Road
Hollywood, Florida 33024

Dear Chairman Cypress:

On November 14, 2007, we received a Class III gaming compact between the Seminole Tribe and the State of Florida for review and approval pursuant to the Indian Gaming Regulatory Act of 1988 (IGRA). Under the terms of IGRA, the Secretary must approve or disapprove the compact within 45 days of its receipt. The deadline for making a decision on the compact is December 28, 2007. I am writing you today to inform you that the Department will not issue Class III gaming procedures for the Seminole Tribe pursuant to 25 CFR Part 291 while the compact is under consideration by the Department.

The purpose of the regulations in 25 CFR Part 291 is to enable Indian tribes, if certain conditions are met, to operate Class III gaming facilities under Secretarial procedures when a state has refused to negotiate a compact and has raised a sovereign immunity defense to a good faith lawsuit brought by an Indian tribe. Conversely, when a state has entered into a gaming compact with an Indian tribe pursuant to IGRA, that tribe is no longer eligible for Class III Secretarial procedures pursuant to 25 CFR Part 291.

Sincerely,

George T. Skibine
Acting Deputy Assistant Secretary -
Policy and Economic Development

cc: The Honorable Charlie Crist
Governor, State of Florida



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.07-60317-CIV-MIDDLEBROOKS/JOHNSON

SEMINOLE TRIBE OF FLORIDA,

Plaintiff,

MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA,

Plaintiff/Intervenor,

v.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
THE INTERIOR, DIRK KEMPTHORNE,
in his official capacity as SECRETARY OF
THE INTERIOR,

Defendants.
_________________________________________/

**ORDER**

This Cause comes before the Court upon the Seminole Tribe of Florida and the Federal Defendants' Joint Motion to Stay All Proceedings (DE 45).[1] The Court has reviewed the record and is otherwise fully advised in the premises.

The parties request that this action be stayed for a period of sixty (60) days as they await the decision of the Secretary of the Interior, who may approve or disapprove the compact signed by the Governor of Florida and the Seminole Tribe of Florida. If the secretary does not approve

[1]The parties state that counsel for the Miccosukee Tribe, the intervening plaintiff in this action, has no objection to staying all proceedings for sixty days.

or disapprove the compact within 45 days, the compact is deemed approved by the Secretary to the extent the compact is consistent with the provisions of the Indian Gaming Regulatory Act ("IGRA"). The 45-day period expires on December 28, 2007. If the compact is approved, the reason the instant action was brought disappears.

Accordingly, it is

ORDERED AND ADJUDGED that said Joint motion is GRANTED. This action is STAYED for a period of sixty (60) days, and the parties are to file a Joint Status Report at the expiration of the 60 days from the date of this Order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 15th day of November, 2007.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASE NO: _______________

THE STATE OF FLORIDA, *ex. rel.*
Bill McCollum, Attorney General

Plaintiffs,

vs.

THE UNITED STATES, THE UNITED STATES DEPARTMENT OF THE INTERIOR, and DIRK KEMPTHORNE, in his official capacity as Secretary of the United States Department of the Interior,

Defendant.

---

**DECLARATION OF BARRY RICHARD**

---

The undersigned, Barry Richard, makes the following declaration under penalty of perjury:

1. I am an attorney licensed to practice in the District of Columbia and the states of Florida and New York.

2. I am attorney of record for the Seminole Tribe of Florida in the case titled *Florida House of Representatives, et al. vs. Honorable Charles J. Crist, Jr.*,filed on November 19, 2007 and currently pending in the Supreme Court of Florida as Case. No. SC 07-2154. The three parties to the case are the Speaker of the Florida House of Representatives, the Governor of the State of Florida, and the Seminole Tribe of Florida.

3. On November 26, 2007, the Supreme Court of Florida ordered the parties to "address the issue of how the Secretary of the Interior's December 29, 2007 deadline for approving the Compact affects this Court's review." [Attachment A]

4. All three parties to the Florida Supreme Court case responded to the Court's order that the 45-day deadline for the Secretary of the Interior to act would have no impact upon the efficacy of a Florida Supreme Court decision.

5. The relevant pages of the filings by the Speaker, Governor and Seminole Tribe are attached as Attachments B, C, and D, respectively.

6. I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 21, 2007.

Barry Richard

*TAL 451,443,988v1 12/21/2007*

# Supreme Court of Florida

MONDAY, NOVEMBER 26, 2007

**CASE NO.:** SC07-2154

FLORIDA HOUSE OF REPRESENTATIVES, ET AL. vs. HON. CHARLES J. CRIST, JR., ETC.

Petitioner(s) Respondent(s)

Petitioner has filed a petition for writ of quo warranto. The Seminole Tribe of Florida has filed a motion to join this proceeding as a respondent. The motion to join is hereby granted.

Respondents are hereby requested to serve responses to the above-referenced petition on or before December 3, 2007. The petitioner may serve a reply on or before December 6, 2007.

Further, the parties are also directed to address the issue of how the Secretary of the Interior's December 29, 2007, deadline for approving the Compact affects this Court's review.

LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

A True Copy
Test:

Thomas D. Hall
Thomas D. Hall
Clerk, Supreme Court

SUPREME COURT OF THE STATE OF FLORIDA

bm
Served:

JON L. MILLS
TIMOTHY MCLENDON
JEREMIAH M. HAWKES
HON. BILL MCCOLLUM

that law in the best interests of the People of Florida. In so doing, he not only fulfilled his constitutional obligations but also took care to avoid encroaching on legislative authority. More specifically, the Compact does not make new laws or alter existing laws, does not create any new state agency or impose unauthorized obligations on an existing state agency, does not commit the resources of the State without authorization, and does not waive the State's sovereign immunity.

A separation of powers violation occurs only where one branch of government encroaches upon powers reserved specifically and exclusively to another branch. Yet Petitioners, without citation of any authority, ask this Court to hold that the power to contract is solely and exclusively reserved to the Legislature even though the constitution does not itself so provide. Thus, even assuming Petitioners have invoked properly this Court's jurisdiction and established entitlement to quo warranto relief, which they have not, there is no basis on which to conclude either that the Governor lacked authority to execute the Compact or that in so doing he violated the separation of powers.

**RESPONSE TO THE COURT'S NOVEMBER 26, 2007, QUESTION**

The Governor submits that the Secretary of the Interior's approval would not foreclose a later judicial determination that a Compact is invalid if not authorized under state law. Moreover, should the Secretary disapprove the Compact, this action would be moot.

## I.
## THE SECRETARY'S DEADLINE DOES NOT AFFECT THIS COURT'S DECISION[1]

The Secretary of the Interior must approve or disapprove a compact within 45 days of submission, otherwise the compact shall be considered approved. 28 U.S.C. § 2710(d)(8)(C). December 28, 2007 is the 45th day. That deadline should have no affect upon this Court's review. The Court has no jurisdiction over the Secretary. A decision by this Court finding that this Compact is not valid without legislative approval might well influence the Secretary in the exercise of his discretion to approve or disapprove the Compact. However, even if the Compact is approved, the decision of the Secretary is reviewable under the federal Administrative Procedures Act for a period of six years after publication of such approval in the Federal Register. 28 U.S.C. § 2401(a); 5 U.S.C. §§ 702, 706; *see also* App. A. In addition, for the reasons stated below, the Petition seeks an advisory opinion that is beyond the jurisdiction of this Court.

[1] As discussed in Part II, the Tribe submits that this Court is without jurisdiction over this matter and, without waiving same, addresses this issue in response to the Court's order dated November 26, 2007.

## ARGUMENT

### I. IGRA'S FORTY-FIVE DAY DEADLINE FOR FEDERAL APPROVAL OF COMPACTS DOES NOT AFFECT THIS COURT'S REVIEW OF WHETHER THE STATE HAS VALIDLY ENTERED A COMPACT.

In its order of November 28, 2007, this Court asked parties to address the issue of the forty-five day deadline for approval of the Compact by the Secretary of the Interior. This deadline has no relevance for this Court's legal review of the Governor's authority to act under the Florida Constitution. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1558 (10th Cir.), *cert. denied*, 522 U.S. 807 (1997) ("State law must determine whether a state has validly bound itself to a compact.").

Although the December deadline does not affect the question of law presented by this Quo Warranto Petition, there are compelling reasons to decide this case within that deadline. First, the Compact currently presents a question of law. No gaming contrary to existing Florida law has begun. At this point the question may be answered and the Compact addressed without disturbing or harming the interests of other parties. Secondly, a prompt decision by this Court resolving the question of the Governor's authority would place the Secretary of the Interior on notice that the document submitted to him by the Seminole Tribe either is not a valid compact, or is indeed valid.

# Supreme Court of Florida

MONDAY, NOVEMBER 26, 2007

**CORRECTED ORDER**
**CASE NO.:** SC07-2154

| FLORIDA HOUSE OF REPRESENTATIVES, ET AL. | vs. | HON. CHARLES J. CRIST, JR., ETC. |
|---|---|---|
| Petitioner(s) | | Respondent(s) |

Petitioner has filed a petition for writ of quo warranto. The Seminole Tribe of Florida has filed a motion to join this proceeding as a respondent. The motion to join is hereby granted.

Respondents are hereby requested to file responses to the above-referenced petition on or before December 3, 2007. The petitioner may file a reply on or before December 6, 2007.

Further, the parties are also directed to address the issue of how the Secretary of the Interior's December 29, 2007, deadline for approving the Compact affects this Court's review.

LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

A True Copy
Test:

Thomas D. Hall
Clerk, Supreme Court

SUPREME COURT OF THE STATE OF FLORIDA — SAT CITO SI RECTE

bm
Served:

JON L. MILLS
TIMOTHY MCLENDON
JEREMIAH M. HAWKES
HON. BILL MCCOLLUM
CYNTHIA S. TUNNICLIFF
BARRY S. RICHARD
GLENN T. BURHANS
JERRY C. STRAUSS
JOSEPH H. WEBSTER
F. MICHAEL WILLIS

# Supreme Court of Florida

FRIDAY, DECEMBER 7, 2007

**CASE NO.:** SC07-2154

| FLORIDA HOUSE OF REPRESENTATIVES, ET AL. | vs. | HON. CHARLES J. CRIST, JR., ETC. |
|---|---|---|
| Petitioner(s) | | Respondent(s) |

The Court has determined oral argument is warranted in the above case and will hear oral argument at 9:00 a.m., Wednesday, January 30, 2008, instead of December 12, 2007. A maximum of twenty minutes to the side is allowed for the argument, but counsel is expected to use only so much of that time as is necessary.

NO CONTINUANCES WILL BE GRANTED EXCEPT UPON A SHOWING OF EXTREME HARDSHIP.

A True Copy
Test:

Thomas D. Hall
Clerk, Supreme Court

SUPREME COURT OF THE STATE OF FLORIDA

vm
Served:

BRANDICE D. DICKSON
JASON VAIL
JEREMIAH M. HAWKES
JON L. MILLS
TIMOTHY MCLENDON
MARC WESLEY DUNBAR
JOSEPH H. WEBSTER
JAMES A. MCKEE
CHRISTOPHER MICHAEL KISE

CYNTHIA S. TUNNICLIFF
GERALD B. CURINGTON
BARRY S. RICHARD
F. MICHAEL WILLIS
JERRY C. STRAUSS
GLENN T. BURHANS
ERIK M. FIGLIO
PAUL C. HUCK

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

STATE OF FLORIDA and
STATE OF ALABAMA,

Plaintiffs,

v. CASE NO. 4:99cv137-RH/WCS

UNITED STATES OF AMERICA,
et al.,

Defendants.

_____________________________________/

**ORDER FOR DISMISSAL**

Plaintiffs the State of Florida and State of Alabama filed this action in 1999 challenging regulations promulgated by the United States Secretary of the Interior pursuant to the Indian Gaming Regulatory Act ("IGRA"). Plaintiffs named as defendants the United States of America, the United States Department of the Interior, and the Secretary of the Interior.

Under IGRA, the Secretary may authorize gaming activities on Indian lands, to the extent consistent with federal and state law, if an Indian tribe has entered a voluntary agreement, or "compact," with the state in which the lands are located.

If the state fails to negotiate for a compact in good faith, the tribe may seek redress in federal court. A state may block such federal litigation, however, by invoking its Eleventh Amendment immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Under the challenged regulations, the Secretary may authorize gaming activities in the absence of a compact—and in the absence of any determination that a state failed to negotiate for a compact in good faith—if the state has blocked federal litigation by invoking its Eleventh Amendment immunity.

Three Indian tribes intervened as defendants in this action soon after it was filed. Intervenors are the Seminole Tribe of Florida, the Miccosukee Tribe of Florida, and the Poarch Band of Creek (of Alabama). The tribes were (and apparently still are) seeking authority from the Secretary under the challenged regulations for gaming activities on their lands.

When this action was filed in 1999, the Secretary apparently was going forward with the administrative process mandated by the challenged regulations as a prerequisite to the granting of such authority to the tribes. The Secretary apparently has never formally called off the administrative process, and the process apparently is proceeding, though the Secretary has failed to act during the now more than eight years since plaintiffs filed this action. The State of Florida

apparently has participated (and apparently is still participating) in the administrative process, but the State asserts in this lawsuit that the regulations are invalid.

The federal defendants, the Seminole Tribe, and the Miccosukee Tribe moved to dismiss this action shortly after it was filed. Their contentions included that the action was not ripe and that plaintiffs lacked standing because the Secretary had not yet acted. The parties submitted a joint scheduling report on February 25, 2000, proposing that the case be resolved by cross-motions for summary judgment to be filed 45 days after the Secretary presented to the parties proposed gaming procedures. The parties expected that presentation to occur without substantial delay. By order entered March 7, 2000, I denied the motions to dismiss, noting that the Secretary's presentation of proposed procedures would obviate the standing and ripeness contentions.

The Secretary did not, however, present proposed procedures as expected. I required periodic status reports for a time but eventually, on January 23, 2003, ordered the clerk to close the case for administrative purposes, thus avoiding unnecessary expenditure of additional judicial and attorney resources. The administrative closure order provided that the case would be reopened at the request of any party; that upon reopening, the schedule as set forth in the March 7, 2000,

order would be reinstated; and that any party could seek relief from that schedule or take any other appropriate action.

On January 25, 2007, the Seminole Tribe moved to reopen the case. The State of Florida and the federal defendants filed memoranda in opposition to the motion to reopen. The State of Alabama, the Miccosukee Tribe, and the Poarch Band of Creek did not respond to the motion.

On February 22, 2007, I entered an order affording the parties an opportunity to show cause by March 7, 2007, why the action should not be dismissed without prejudice. What was said in that order remains true today: the only claim that has been asserted in the action is the plaintiff states' claim that regulations under which the Secretary may authorize gaming on Indian lands under specified circumstances are invalid. The Seminole Tribe does not challenge the validity of those regulations; the Tribe has, instead, intervened as a defendant *in support of* the regulations.

In the absence of any properly filed claim by any party presently seeking relief, there is no basis for reopening this action. The only real question is whether a judgment should be entered dismissing the action without prejudice. The State of Florida asks that the case not be dismissed so that when (or if) the Secretary issues the contemplated gaming procedures, the State may, if it chooses, go forward with

its challenge to the regulations under which the procedures were issued.

As the very framing of this proposition makes clear, no party is seeking relief from this court at this time. There is currently no case or controversy, no party with standing, and no claim that is ripe. It has been more than six months since the State asked that the action remain pending, and more than eight years since this action was filed, still with no administrative action. It may be true, as the State of Florida suggests, that dismissal of this action could entail some level of inefficiency, if indeed at some point the controversy becomes ripe and the action is re-filed.[1] But there also would be inefficiency at that point in dealing with eight-year-old pleadings instead of a new, properly focused complaint, and there would be inefficiency in the meantime in maintaining the case on the docket. More importantly, the doctrines of constitutional case or controversy, standing, and ripeness ought not be sacrificed in the name of efficiency.

For these reasons,

---

[1] In one respect, however, the State's inefficiency argument misses the mark. The State says it would be inefficient to assign a different judge to any new action that might be filed if the case at bar is dismissed. In this district, related actions that for reasons of judicial efficiency should be handled by the same judge are assigned to the same judge. If, after dismissal of this action, a new action is indeed filed, a determination will be made by the court whether the case should be randomly assigned or treated as an action related to the case at bar. This is not a factor that appropriately should inform the decision whether to dismiss the case at bar at this time.

IT IS ORDERED:

Intervenor defendant Seminole Tribe of Florida’s motion to reopen the case (documents 50 and 52) is DENIED. The clerk shall enter judgment stating, “This action is dismissed without prejudice.” The clerk shall close the file.

SO ORDERED this 7th day of September, 2007.

s/Robert L. Hinkle
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

GULFSTREAM PARK RACING ASSOCIATION, INC.,

Plaintiff,

v. CASE NO. 4:07cv540-RH-WCS

DIRK KEMPTHORNE, UNITED STATES SECRETARY OF THE INTERIOR; and CHARLIE CRIST, GOVERNOR OF THE STATE OF FLORIDA,

Defendants.

________________________________________/

**ORDER SETTING HEARING AND PROCEDURES ON**
**MOTION FOR PRELIMINARY INJUNCTION**

This action presents a challenge to a compact that would allow the Seminole Tribe of Florida to conduct gaming activities in Florida. The defendant Governor of the State of Florida entered the compact purportedly on the State's behalf. The compact purportedly would take effect upon approval by the defendant United States Secretary of the Interior.

Plaintiff Gulfstream Park Racing Association conducts horse races and operates slot machines in Broward County, Florida. Gulfstream asserts it will

suffer competitive harm from the Tribe's conduct of the gaming activities authorized by the compact. Gulfstream asserts further that the Governor had no authority to enter the compact on the State's behalf without legislative approval.

Gulfstream has moved for a temporary restraining order and preliminary injunction. Neither the Governor nor the Secretary have responded to the motion. So far as this record reflects, Gulfstream has not provided notice of the motion to either the Governor or the Secretary. Gulfstream has not named the Tribe (or a Tribe official) as a defendant at all and, so far as this record reflects, has not given the Tribe notice of this lawsuit or of the motion.

Upon consideration,

IT IS ORDERED:

1.     Plaintiff's motion for a temporary restraining order is DENIED for failure to establish that irreparable harm will result prior to a hearing on plaintiff's motion for a preliminary injunction and for failure to establish a likelihood of success on the merits on a claim for an injunction that would, as a practical matter, operate principally against a nonparty (the Seminole Tribe of Florida).[1]

---

[1] *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005); *Enterprise Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989); 7 Wright, Miller & Kane, Federal Practice & Procedure § 1613 at 200-03 (2001).

2.     By separate notice, the clerk shall set a hearing on plaintiff's motion
for preliminary injunction for Wednesday, January 9, 2008, at 9:00
a.m.

3.      Plaintiff's attorneys shall attempt diligently and as promptly as
possible to learn the identity of defendants' attorneys.  Plaintiff's
attorneys shall provide copies of the complaint, motion and supporting
papers, this order, and the clerk's notice of hearing, to defendants'
attorneys, immediately upon learning their identity (or, if their
identities are already known, immediately upon receipt of this order).
Notice shall be provided by the most expeditious feasible method and,
if different, by the most reliable method.  If plaintiff's attorneys have
not learned the identity of a defendant's attorney by the end of the day
on Wednesday, January 2, 2008, plaintiff shall serve copies of the
complaint, summons, motion and supporting papers, this order, and
the clerk's notice of hearing, on that defendant or that defendant's
registered agent by Friday, January 4, 2008.

4.      The attorneys for all parties shall attempt to confer prior to the
hearing—and in time to avoid unnecessary attorney's fees, travel and
other expenses attendant to the hearing—in a good faith effort to

reach agreement on all issues presented by the motion or to narrow the issues.

5.    The attorneys for all parties may confer regarding the date of the hearing, which will be moved to another date available on the court's calendar if all parties agree; absent agreement of all parties, the hearing will go forward on January 9.  The courtroom deputy clerk shall cooperate with the parties with respect to the availability of other dates.

6.    By two business days prior to the hearing (and thus by Monday, January 7, 2008, unless all parties agree to change the hearing date in accordance with paragraph 5 above), the attorneys shall confer regarding admissibility of affidavits and exhibits.  If the parties agree to change the hearing date, they may agree to move the deadline established by this paragraph to a time more than two days prior to the hearing.

7.    By noon on the day before the hearing (and thus by noon on Tuesday, January 8, 2008, unless all parties agree to change the hearing date in accordance with paragraph 5 above), each party shall file a list of witnesses and exhibits to be offered at the hearing,

including rebuttal and impeachment witnesses and exhibits, and shall

make each exhibit available to each adverse party for inspection and

copying.  No witness will be allowed to testify, and no exhibit will be

admitted in evidence, unless listed and made available in accordance

with this paragraph.  If the parties agree to change the hearing date,

they may agree to move the deadline established by this paragraph to

a time more than one day prior to the hearing.

8.      On request of any party, the clerk shall set a telephonic scheduling

hearing for any available date prior to the date of the preliminary

injunction hearing.

SO ORDERED this 28th day of December, 2007.

s/Robert L. Hinkle
Chief United States District Judge

(4310-4N-U)

**DEPARTMENT OF THE INTERIOR**

**Bureau of Indian Affairs**

**Indian Gaming**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of Deemed Approved Tribal – State Class III Gaming Compact.

---

**SUMMARY:** This notice publishes the Deemed Approved Compact between the Seminole Tribe of Florida and the State of Florida.

**EFFECTIVE DATE:** [Insert date of publication in the FEDERAL REGISTER].

**FOR FURTHER INFORMATION CONTACT:** George T. Skibine, Director, Office of Indian Gaming, Office of the Deputy Assistant Secretary - Policy and Economic Development, Washington, DC 20240. (202) 219-4066.

**SUPPLEMENTARY INFORMATION:** Under Section 11 of the Indian Gaming Regulatory Act of 1988 (IGRA) Public Law 100-497, 25 U.S.C. § 2710, the Secretary of the Interior shall publish in the Federal Register notice of approved Tribal - State compacts for the purpose of engaging in Class III gaming activities on Indian lands. The compact authorizes the Seminole Tribe to operate slot machines, any banking or banked card game, poker, any devices or games that are authorized under State law to Florida State lottery and any new game authorized by Florida law. The term of the compact is 25 years. The Assistant Secretary - Indian Affairs, Department of the Interior, through his delegated authority, is publishing notice that the Compact between the Seminole Tribe of Florida and the State of Florida is now in effect.

Dated: DEC 3 1 2007

Carl J. Artman
Assistant Secretary - Indian Affairs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE STATE OF FLORIDA, ex. rel. Bill McCollum, Attorney General,** | ) | |
| ***Plaintiff,*** | ) | |
| *v.* | ) | **Civ. No. 1:07-CV-022 -** |
| **THE UNITED STATES OF AMERICA, et al.,** | ) | |
| ***Defendants.*** | ) | |

**DECLARATION OF PAULA L. HART**

I, Paula L. Hart, declare:

1. I am the Deputy Director of the Office of Indian Gaming (OIG), Assistant Secretary - Indian Affairs, within the Department of the Interior (Department), which has responsibility for certain matters arising out of the Indian Gaming Regulatory Act, 25 U.S.C. 2701-2721 (IGRA). I have held this position since May of 2005.

2. The OIG is located within the Department of the Interior building in Washington, D.C., and includes a Director, Deputy Director, two program analysts and two technical staff who perform staff work related to the Secretary's residual responsibilities under the IGRA.

3. As part of my duties, I am responsible for transmitting or delivering to the Federal Register for publication notices regarding whether the Department has approved or deemed approved by operation of law proposed Class III gaming compacts submitted to the Secretary of the Interior consistent with 25 U.S.C. 2710 (d) (8) ( C ) and (D).

4.      The proposed Class III gaming compact between the Seminole Tribe of Florida and the

State of Florida was received by the Secretary on November 14, 2007 and was deemed approved

by operation of law under 25 U.S.C. 2710 (8) ( C ) on December 29, 2007.  On December 31,

2007, Assistant Secretary - Indian Affairs signed the Notice of Deemed Approved Tribal - State

Class III Gaming Compact and I delivered this Notice to the Federal Register in Washington,

D.C., for publication.

5.      No further action is required by this office to effect publication of the Notice.  I was

advised by staff at the Federal Register that the Notice will be published on Monday, January 7,

2007.


I declare under penalty of perjury that the foregoing is true and correct.



        Executed on January 3, 2008.


                                        Paula L. Hart
                                        Deputy Director, Office of Indian Gaming
                                        United States Department of the Interior
                                        1849 C Street, N.W.
                                        Washington, D.C.  20240